# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| **RICHARD W. EDWARDS,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:20CV1341 HEA |
| ) | |
| **KILOLO KIJAKAZI,**[1] ) | |
| **Acting Commissioner of Social Security,** ) | |
| ) | |
| Defendant. ) | |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court for judicial review of the final decision of the Commissioner of Social Security denying Plaintiff's application for disability insurance benefits under Title II, 42 U.S.C. §§ 401-434 and supplemental security income under Title XVI of the Act, 42 U.S.C. §§ 1381-1385. The Court has reviewed the filings and the administrative record in its entirety, including the transcripts of the hearings before the Administrative Law Judge (ALJ). The decision of the Commissioner will be affirmed.

## Background

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted, therefore, for Andrew Saul as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Plaintiff filed an application for disability insurance on December 19, 2014. He later filed an application for supplemental security income. On May 13, 2015, Defendant issued a Notice of Disapproved Claims. Plaintiff filed a Request for Hearing by Administrative Law Judge on July 8, 2015. After a hearing, the ALJ issued an unfavorable decision dated July 18, 2017. On August 28, 2017, Plaintiff filed a request for review with Defendant agency's Appeals Council. The Appeals Council denied Plaintiff's request for review on April 4, 2018.

Plaintiff filed a complaint in this Court on May 22, 2018, Case Number 4:18 CV 784 NCC. On September 26, 2019, Judge Collins reversed and remanded the administrative decision for further evaluation. After a supplemental hearing on May 28, 2020, the ALJ issued a partially favorable decision dated August 15, 2020. The decision of the ALJ became the final decision of Defendant agency. See 20 CFR § 404.984. Plaintiff has exhausted his administrative remedies.

The ALJ found Plaintiff met his insured status through December 31, 2019 and that he has not engaged in substantial gainful activity since July 15, 2013, the alleged onset date.  In her decision, the ALJ found Plaintiff had the severe impairments of degenerative disc disease, post-traumatic stress disorder (PTSD), traumatic brain injury (TBI)/post-concussive syndrome, anxiety, depression, agoraphobia, bipolar disorder, carpal tunnel and mild cubital syndrome, bilateral, left arm fracture, occipital neuralgia, and migraines.  The ALJ concluded that Plaintiff's left arm fracture medically equaled the criteria of sections 1.08 of

20 CFR Part 404, Subpart P, Appendix 1 from July 15, 2013 through February 28, 2015.  However, the ALJ found that after February 28, 2015 to the present, Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. While the ALJ found none of Plaintiff's impairments met or medically equaled a listed impairment after February 28, 2015, the ALJ did find some limitations. Specifically, the ALJ found Plaintiff retained the residual functional capacity (RFC) to perform:

> Light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can occasionally climb ramps and stairs but never climb ladders, ropes, or scaffolds.  He can frequently balance as defined by the DOT. He can frequently stoop, kneel, and crouch, but never crawl. He can frequently handle and finger with the bilateral hands.  He cannot work with exposure to unprotected heights and can have only occasional exposure to extreme cold or vibration.  He is limited to simple, routine, and repetitive tasks.  He has sufficient concentration to persist in such tasks at an acceptable rate with standard breaks. He can have few changes in the work setting, make only simple work-related judgments, and perform no work with a performance-rate pace such as assembly-line work.  He can have only occasional interaction with supervisors and coworkers, no tandem tasks, and no work with the general public. He must work in a Code 3 or less noise environment.

Based on vocational expert testimony, the ALJ found Plaintiff could not perform his former work but could perform work such as mail clerk, marker, and photo copy machine operator.

## **Legal Standard**

To be eligible for DBI under the Social Security Act, Plaintiff must prove that [s]he is disabled. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Secretary of Health & Human Servs.,* 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines disability as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual will be declared disabled "only if [her] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner engages in a five-step evaluation process to determine whether a claimant is disabled. *See* 20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). At Step One, the ALJ determines whether the claimant is currently engaged in substantial gainful activity. At Step Two, the ALJ considers whether the claimant has a "severe" impairment or combination of impairments. At Step Three, the ALJ determines whether the severe impairment(s) meets or medically equals the severity of a listed impairment; if so, the claimant is determined to be disabled, and if not, the ALJ's analysis proceeds to Step Four.

4

At Step Four of the process, the ALJ must assess the claimant's residual functional capacity (RFC) – that is, the most the claimant is able to do despite her physical and mental limitations, *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) – and determine whether the claimant is able to perform any past relevant work. *Goff v. Barnhart,* 421 F.3d 785, 790 (8th Cir. 2005) (RFC assessment occurs at the fourth step of process).

The claimant bears the burden through Step Four of the analysis. If [s]he meets this burden and shows that [s]he is unable to perform [her] past relevant work, the burden shifts to the Commissioner at Step Five to produce evidence demonstrating that the claimant has the RFC to perform other jobs in the national economy that exist in significant numbers and are consistent with [her] impairments and vocational factors such as age, education, and work experience. *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012).

The Court must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010). Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion. *Jones*, 619 F.3d at 968. Additionally, the Court must consider evidence that supports the Commissioner's decision as well as any evidence that fairly detracts from the decision. *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016). If, after reviewing

5

the entire record, it is possible to draw two inconsistent positions and the Commissioner has adopted one of those positions, the Court must affirm the Commissioner's decision; the Court may not reverse the Commissioner's decision merely because substantial evidence could also support a contrary outcome. *Id; see also Fentress v. Berryhill*, 854 F.3d 1016, 1021 (8th Cir. 2017).

**Residual Functional Capacity (RFC)**

A claimant's RFC is the most an individual can do despite the combined effects of all of his or her credible limitations. *See* 20 C.F.R. § 404.1545. An ALJ's RFC finding is based on all of the record evidence, including the claimant's testimony regarding symptoms and limitations, the claimant's medical treatment records, and the medical opinion evidence. *See Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir.2010); *see also* 20 C.F.R. § 404.1545; Social Security Ruling (SSR) 96–8p.

## Statement of the Issues

Generally, the issues in a Social Security case are whether the final decision of the Commissioner is consistent with the Social Security Act, regulations, and applicable case law, and whether the findings of fact are supported by substantial evidence on the record as a whole. The specific issues here are (1) whether the ALJ properly evaluated the entire closed period of disability; (2) whether the ALJ properly evaluated the opinion evidence

## Discussion

The ALJ carefully detailed her findings through her discussion of Plaintiff's impairments. As described above, this Court's role is to determine whether the ALJ's findings are supported by substantial evidence on the record as a whole. *See* 42 U.S.C. §§ 405(g); 1383(c)(3); *Richardson*, 402 U.S. at 401; *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). So long as there is substantial evidence in the record that supports the decision, this Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. *Haley v. Massanari,* 258 F.3d 742, 747 (8th Cir. 2001).

**Did the ALJ properly evaluate the entire closed record?**

Plaintiff disagrees with the ALJ's determination that his disability ended February 28, 2015.  He discusses his previous surgeries and treatment which resulted from his 2013 fall.  Plaintiff argues that the medical expert hired by Defendant, Robert Kendrick, MD, did not consider Plaintiff's last surgery on his left forearm on August 21, 2015 and therefore, the ALJ's decision is erroneous.

Plaintiff's reliance on this argument fails to recognize that the August 21, 2015 surgery was characterized by Dr. Kutnik as an elective procedure that had uncertain prospects of further improving Plaintiff's symptoms.  Indeed, Plaintiff was released from any work restrictions three days after the procedure, his wound healed within two months and Dr. Kutnik cleared Plaintiff to lift up to 25 pounds

7

with his left arm. Dr. Kendrick's opinion did not need to include the 2015 surgery since it did not fall within the category of "continuous surgical management." Dr. Kendrick's opinion includes the continuous surgical management period and takes into consideration the 6-month healing period for disability purposes. The ALJ's assessment of the weight to be given to Dr. Kendrick is based on Plaintiff's objective medical record and is therefore substantially supported by the record. The ALJ details Plaintiff's treatment and concluded that Dr. Kendrick's opinion accurately assesses Plaintiff's period of disability.

**Did the ALJ properly evaluate the opinion evidence?**

Plaintiff argues the ALJ did not properly consider Dr. Emily Doucette's opinion. Dr. Doucette is Plaintiff's primary care physician. Plaintiff, however, focuses his arguments on the previous records prior to the remand. As Defendant correctly argues, the ALJ identified three major reasons she gave little weight to Dr. Doucette's opinion:

> the record "does not support constant severe attention and concentration issues;"
>
> her opinions as to Plaintiff's walking, sitting, standing, and lifting capacities are belied by objective evidence of his full strength, intact sensation, only mild degenerative disc disease, and the absence of lower-back or leg impairments; and
>
> it was unclear how she reached her opinion that Plaintiff would miss four or more days of work each month.

8

With regard to Dr. Sky's opinion, the ALJ correctly did not give significant weight to his generalization and discussion of common problems with people with PTSD. The decision must be based on *Plaintiff's* impairments, not what is commonly experienced by people with PTSD.

Here, the ALJ acknowledged that Plaintiff does have physical and mental impairments, which warrant some work restrictions.

In explaining her findings, the ALJ need only "minimally articulate reasons for crediting or rejecting evidence of disability." *Strongson v. Barnhart*, 361 F.3d 1056, 1070 (8th Cir. 2004)(citing *Ingram v. Chater*, 107 F.3d 598, 601 (8th Cir. 1997). The ALJ did not improperly evaluate this opinion evidence when considering the record as a whole. The ALJ discussed the reasons for her finding that Plaintiff was not disabled beyond February 28, 2015. While Plaintiff disagrees with the decision and points to some evidence supporting his position, the ALJ's decision is based upon substantial evidence in the record supporting the conclusion that Plaintiff does not meet the definition of disabled, and accordingly, there is no basis for reversal.

## Conclusion

After careful review, the Court finds the ALJ's decision is supported by substantial evidence on the record as a whole. *Perkins v. Astrue,* 648 F.3d 892, 900 (8th Cir. 2011).

Accordingly,

9

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED.**

A separate judgment shall be entered incorporating this Memorandum and Order.

Dated this 28th day of March, 2022.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE